[L. A. No. 1263.    Department Two.—August 16, 1904.]

GEORGE A. BETTS, Respondent, v. SOUTHERN CALIFORNIA FRUIT EXCHANGE, Appellant.

SALE OF CARLOAD OF LEMONS—AGREED PRICES—COMMISSIONS—FACTOR—OBLIGATIONS IMPOSED BY CONTRACT.—Where the authorized agents of the defendant corporation agreed with the plaintiff in this state to take from him a carload of lemons at prices agreed, for the purpose of carrying into effect a sale made by defendant's agent at a city in another state, and agreed upon its delivery of the lemons thereat, to account to plaintiff for them, after deducting an agreed commission, though the defendant was not in the transaction within the technical definition of a factor, yet its relation to the plaintiff, after delivery to it of the lemons, as directed, was substantially that of a factor.

ID.—PERFORMANCE BY PLAINTIFF—BREACH BY DEFENDANT.—The contract of sale was performed on plaintiff's part when he delivereo

the carload of lemons as directed by the defendant; and as the lemons were delivered to it for a special purpose, it was not at liberty to divert them from that purpose and ship them to another point without plaintiff's consent, and by so doing it broke its contract with the plaintiff.

ID.—ACTION FOR BREACH—RECOVERY OF VALUE.—Where the defendant, by its breach of the contract, caused the lemons to be sold for less than the cost of their transportation, the plaintiff was entitled to recover from the defendant the value of the lemons as damages for such breach.

ID.—AGENCY FOR CORPORATION — FUNCTIONS OF SECRETARY — GENERAL MANAGER.—Where the evidence shows that the functions of the secretary of the corporation defendant were not limited as such, but included nearly all of the functions of a general manager of the business, there appearing to be no other person charged with the management of its affairs, the action of such secretary in making the contract with plaintiff on behalf of the defendant corporation was binding upon it.

ID.— EXPRESS DELEGATION OF AUTHORITY NOT REQUIRED — CIRCUMSTANCES TO BE CONSIDERED.—The question whether the corporation defendant is bound by the transaction of the plaintiff with its secretary acting as manager, does not depend upon the presence or absence of any express delegation of authority to him or resolution therefor by its board of directors, but is to be determined upon a consideration of all the circumstances connected with the transaction, including the relation of the defendant to subordinate fruit exchanges, the mode in which the fruit exchange defendant ordinarily conducted its business, and the plaintiff's previous dealings with it.

ID.—USE OF SUBORDINATE FRUIT EXCHANGE—CONFLICTING EVIDENCE.— Where the evidence of the plaintiff showed that the shipment of the lemons was made through the Orange County Fruit Exchange, a subordinate corporation, for which the manager of the defendant was acting, and was so made by his direction as manager of the defendant, the finding of the court in favor of such evidence, as against conflicting evidence to the contrary, will not be disturbed upon appeal.

ID.—EVIDENCE—MARKET PRICE OF LEMONS—INFORMATION—SUPPORT OF FINDING.—The testimony of the plaintiff with reference to the market price of the lemons was not incompetent merely because his knowledge was derived from the information of others, and, in the absence of any other evidence, was sufficient to sustain a finding as to their value. The market price of an article is often shown by reference to published statements of that fact.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. Waldo M. York, Judge.

The facts are stated in the opinion.

Hunsaker & Britt, and McKinley & Graff, for Appellant.

The defendant's secretary had no actual or ostensible authority to make the alleged contract for the defendant corporation. (Civ. Code, secs. 305, 2315, 2316, 2317; 4 Thompson on Corporations, sec. 4697; 2 Cook on Corporations, 4th ed., sec. 717; *Thomasson* v. *Grace M. E. Church,* 113 Cal. 558; *Montgomery* v. *Keppel,* 75 Cal. 133;[1] *Read* v. *Buffum,* 79 Cal. 77;[2] *Blood* v. *Marcuse,* 38 Cal. 590;[3] *Sanders* v. *Chartrand,* 158 Mo. 352.)

Gibbon & Halstead, and Gibbon, Thomas & Halstead, for Respondent.

Defendant's secretary had both actual and ostensible authority, as manager, to bind the defendant corporation. (Civ. Code, sec. 2300; *Quinn* v. *Dresbach,* 75 Cal. 161;[4] Thompson on Corporations, sec. 5250; *Pixley* v. *Western Pacific R. R. Co.,* 33 Cal. 184;[5] *Cox* v. *Robinson,* 82 Fed. 277.)

HARRISON, C.—The defendant is a corporation organized under the laws of this state. Among the purposes for which it is formed, are, as stated in its articles of incorporation, to engage in the general business of buying, marketing, and selling fruit and other merchandise; to engage in a general brokerage, factor, auction, and commission business; to conduct a forwarding and shipping business; to establish and maintain agencies of said classes of business in this state and in other states of the United States, etc. A. B. Wright was its agent at Wichita, in the state of Kansas, and A. H. Cargill was its secretary at Los Angeles, in this state, during the times herein considered. In 1895 defendant entered into a contract with certain other corporations, one of which was the Orange County Fruit Exchange, by which it was appointed the agent and representative of those corporations, and given the exclusive right to market, sell, and dispose of the fruit handled by them. The Orange County Fruit Exchange consists of certain subordinate associations within

[1] 7 Am. St. Rep. 125.
[2] 12 Am. St. Rep. 131.
[3] 95 Am. Dec. 139.
[4] 7 Am. St. Rep. 138.
[5] 91 Am. Dec. 623.

the county of Orange, which are also incorporated, and with which it entered into written contracts for marketing their fruits. These associations consist of fruit-growers for whom they act in their dealings with the Orange County Fruit Exchange.

August 11, 1896, the defendant received at its office in Los Angeles the following telegram from Wright, its agent at Wichita:—

"We want car lemons. Ship in choice and fancy. One-third 300, balance 360. 4.50 and 5. A. B. WRIGHT." (The numbers 4.50 and 5 meaning four dollars and fifty cents per box for choice and five dollars for fancy grade for the fruit, and the numbers 300 and 360 designating certain sizes of the fruit.)

At the time of its receipt the plaintiff was in the office of the defendant, and Mr. Cargill showed him the telegram and proposed to him to fill the order. The plaintiff agreed thereto, and thereupon Cargill wrote the name of the plaintiff across the telegram, and in his presence wrote the following telegram, which he sent to Wright on the next day:—

"We have your telegram of 11th. Will ship car on 14th or 15th. 4.50 choice here. Shall we ice.
                    "SOUTHERN CALIFORNIA FRUIT EXCHANGE."

On the same day Wright sent the following telegram in reply:—

                    "WICHITA, August 12, 1896.

"Southern California Fruit Exchange: Telegram of 12th received. Lemons arriving as sound as the general run at this season of the year. Don't ice.     A. B. WRIGHT."

After agreeing with Cargill to fill the order the plaintiff went to his orchard and packed the lemons upon the car. Before the car was loaded Cargill sent him the following letter:—

                    "LOS ANGELES, CAL., Aug. 12, 1896.

"Mr. George A. Betts—Dear Sir: Please don't ice the car you are loading now for Wichita. Ship the car to the Southern California Fruit Exchange from the Orange County Fruit Exchange, and send the original bill of lading and car report invoice to the Orange County Fruit Exchange, and they will forward same to Mr. A. B. Wright, Wichita. Also

send copy of the car report to this office. Route the car via
A. T. & S. F. Yours truly, A. H. Cargill, Secretary.''

After receiving this letter the plaintiff finished packing the
car, and shipped and billed it as therein directed. August
19th the defendant sent to Wright the following telegram:—

"Los Angeles, August 19th, 1896.

"A. B. Wright, Wichita, Kansas. Shipped 15th car A. T.
929, 70 fancy, 230 choice.

"Southern California Fruit Exchange.''

The car arrived at Wichita on the 21st of August, but prior
to that date Wright had supplied the purchaser for whom
he had sent the order with another car of lemons received
from a different source, and at the time the car sent by the
defendant arrived the market at Wichita was overstocked
with lemons, and the defendant, without consulting the plain-
tiff, and without his knowledge, sent the lemons to New York
and there caused them to be sold for less than the cost of
their transportation. The present action was brought to
recover from the defendant the value of the lemons as dam-
ages for failing to comply with its agreement with the plain-
tiff. Judgment was rendered in favor of the plaintiff, and
from an order denying the defendant's motion for a new trial
the present appeal has been taken.

By this transaction between Cargill and Wright on the
one hand, representing the defendant, and the plaintiff on
the other hand, the defendant agreed with the plaintiff to
take from him a carload of lemons at the prices named in the
telegram, for the purpose of carrying into effect the sale
which its agent had made at Wichita, and upon the delivery
of the lemons at Wichita to account to him for them, after
deducting its commission, which it was agreed between them
should be five cents per box. Although the defendant was
not in this transaction within the technical definition of a
factor, in that the lemons were not first placed in its pos-
session by the plaintiff for the purpose of a sale, but were
delivered to it by him at its request, for the purpose of com-
pleting a sale already effected, yet its relation to the plaintiff
after he had delivered them to it was substantially that of a
factor. The court has found all the facts of the transaction,
and the fact that it has designated the defendant as a factor,
or found that in these transactions it acted as a factor for

the plaintiff, is immaterial.  The defendant has not shown
that by reason of the transaction it has any rights as a factor
which are inconsistent with the decision of the court.  As the
lemons were delivered to it for a special purpose, it was not
at liberty to divert them from that purpose without the con-
sent of the plaintiff.  By taking them to a different market
and there selling them without his authority or knowledge,
it violated its obligation to him.  Performance on his part,
which was required by virtue of the transaction, was com-
plete when he delivered the lemons to the Orange County
Fruit Exchange, as directed by the defendant.  Upon such
delivery there was imposed upon the defendant the obliga-
tion to transport them to Wichita and receive from the pur-
chaser payment therefor at the price at which they had been
sold and to account therefor to the plaintiff.

The transaction between Cargill and the plaintiff is not
controverted, but the appellant contends that Cargill had
no authority to create such an obligation against it, and that
the agreement arising out of the transaction between him and
the plaintiff is not binding upon it.  Whether the defendant
is bound by the transaction does not depend upon the pres-
ence or absence of any express delegation of authority to
Cargill or resolution therefor by its board of directors, but
is to be determined upon a consideration of all the circum-
stances connected with the transaction, including the relation
of the defendant to the subordinate exchanges, the man-
ner in which it ordinarily conducted its business, and the
plaintiff's previous dealings with it.

From the facts disclosed at the trial herein, as set forth in
the bill of exceptions, Cargill appears to have attended to
nearly all of the business of the defendant, and there does not
appear to have been any other person charged with the man-
agement of its affairs.  He was the secretary of the defendant,
and was also a member of the board of directors of the Orange
County Fruit Exchange, and acted for it in the shipment of
the lemons after they had been delivered to it by the plaintiff.
The managing agent of that exchange was absent on a vaca-
tion at this time, and Cargill prepared the manifest, and sent
it and the bill of lading to the defendant's agent at Wichita.
Mr. Naftzger, the president of the defendant, testified that
he knew nothing about the transaction until after the ship-

ment had been made. He also testified that the duties of Cargill, as secretary, were "to keep the records of the business transacted, to see that the fruit turned over to the Southern California Fruit Exchange by the various exchanges was forwarded and marketed to the best advantage, and to see that the collections were properly made, and to take care of the correspondence of the corporation." Cargill himself testified: "My duties as secretary with reference to filling those orders was to apportion the orders amongst the different exchanges in accordance with a certain ratio, when they could fill them. If I got an order for a carload of lemons that an agent wired me he had sold for a certain amount for future delivery, my duty was simply to call up the lemon exchanges, and endeavor to see whether they could fill that order. . . . In this matter I was dealing as the secretary of the Southern California Fruit Exchange in the apportionment of orders, and with Mr. Betts as a member of the Brookhurst Association."

We are of the opinion that under the evidence before it the court was authorized to hold that the defendant was bound by the acts of Cargill in his transaction with the plaintiff. The defendant was publicly engaged in the occupation of marketing fruits grown in Southern California, shipping them therefrom, and selling them in different places in the United States. This was stated in its articles of incorporation to be within the purposes for which it was incorporated. In its contract with the several exchanges for the marketing of fruit in their behalf it is recited that it is organized for the purpose of engaging in the general business of marketing and selling fruit and other Southern California products, as well as for acting as the agent of those exchanges. There is no provision in its contract which limits its business to that which it may transact in behalf of these exchanges. The public were in no respect informed that it was engaged solely in the transaction of such business, but was authorized to assume that its regular occupation was that which was indicated by its acts, so far as those acts were within its corporate powers, as defined in its articles of incorporation.

The functions of Cargill were far more extensive than the ordinary functions of a secretary. They included, as was stated by Mr. Naftzger, the duty "to see that the fruit turned

over to the defendant was forwarded and marketed to the best advantage, and to see that the collections were properly made.'' Cargill thus became clothed with nearly all the functions of a general manager of the business, and his open and public exercise of these functions was a notice that he had the authority of a manager. The plaintiff herein had no knowledge or notice of the existence of a contract between the defendant and the exchanges, or that the business of the defendant was in any respect limited to marketing the fruit furnished by the exchanges. The defendant had, only a few days previous, taken a carload of his lemons, shipped them to Montana, sold them at the price fixed by him, deducted its commission, and returned to him the proceeds. Although the defendant sought to show that in this transaction the plaintiff had availed himself of the contract between defendant and the exchanges, and had shipped his fruit through the Orange County Fruit Exchange, as a member of the Brookhurst Association, yet the plaintiff testified that he had no knowledge of the contract, or of any agreement between that exchange and the Brookhurst Association, and had never been a member of the Brookhurst Association; that he had billed the car as being sent from the Orange County Fruit Exchange to the defendant simply because he had been directed so to do. The superior court accepted the testimony of the plaintiff instead of that on behalf of the defendant, and we are not at liberty to disregard its action in that respect.

The testimony of the plaintiff with reference to the market price of the lemons was not incompetent merely because his knowledge was derived from the information of others, and in the absence of any other evidence was sufficient to sustain the finding of the court as to their value. The market price of an article is often shown by reference to published statements of that fact. His testimony with reference to the price when he shipped the Montana car was introduced for the purpose of showing the character of that transaction, and not for the purpose of establishing the value of the lemons in dispute.

Exception was taken to several rulings of the court upon the admission of evidence, but none of these rulings was of such a character as to require particular consideration, or to justify a reversal of the order appealed from. The bill of

exceptions does not show what portion of the testimony of Mr. Naftzger was the "answer" which the plaintiff asked to have stricken out.

We advise that the order appealed from be affirmed.

Cooper, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is affirmed.

McFarland, J., Lorigan, J., Henshaw, J.