CHICAGO—FIRST DISTRICT—OCTOBER, 1912.    93

The Cary Maple S. Co. v. The Pierre Viau M. Co., 173 Ill. App. 93.

## The Cary Maple Sugar Company, Appellee, v. The Pierre Viau Maple Company, Appellant.

### Gen. No. 16,991.

1. SALES—*provision as to time of shipment.* Where a contract provides for shipment "June 1st, 1909, or before," and the words "if" and "provided you keep us supplied," and "at your option," are crossed out, but at the bottom it is stated "ship when you wish provided you keep us supplied," it is evident that the final agreement was contained in the last provision.

2. SALES—*final provision as to time of shipment.* Where a contract provides for shipment, "June 1st, 1909, or before" and it is stated at the bottom, after several provisions as to shipment which are crossed out, "Ship when you wish provided you keep us supplied," the last provision is shown by the conduct of the parties to be the final agreement where the buyer objected to the quality of goods shipped after June 1st, without objecting to the time, and where his conduct concerning the inspection of samples shows that the claim of delay was an afterthought.

3. EVIDENCE—*hearsay.* Where goods are sold on a commission above the price paid to the producers, evidence as to the price so paid is not hearsay, where it is based on personal knowledge.

4. APPEALS AND ERRORS—*when cannot be said judgment is for items not in bill of particulars.* On appeal from a judgment in assumpsit for breach of contract, it cannot be said that the judgment covers items not appearing in the bill of particulars where the items aggregate $2,981.97, the judgment is for $1,862.41, and the record does not show what items were allowed.

Appeal from the Municipal Court of Chicago; the Hon. FRANK CROWE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

LANNEN & HICKEY, for appellants.

SIMMONS, MITCHELL & IRVING, for appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

The Cary Maple Sugar Company, hereinafter called plaintiff, recovered a judgment for $1,862.41 against

94    APPELLATE COURTS OF ILLINOIS.

The Cary Maple S. Co. v. The Pierre Viau M. Co., 173 Ill. App. 93.

the Pierre Viau Maple Company, hereinafter called defendant, in an action in *assumpsit* for an alleged breach of a contract to receive and pay for a certain amount of maple sugar. The defendant prosecutes this appeal to reverse this judgment.

The plaintiff is a Vermont corporation engaged extensively in buying maple sugar from the farmers in Vermont and Canada and reselling the same to parties in the United States. The defendant is engaged in the manufacture of syrups, with its 'office in Chicago. On March 15, 1909, the parties entered into a written contract, which is as follows:

"Chicago, March 15, 1909.'
M   Cary Maple Sugar Co.

Ship to us June 1st or before ~~provided you keep us supplied~~.

When ~~at your option~~.

How Ship C. P. & W.

Terms Arrival draft, B-L attached.

125,000 lbs. Beauce Maple Sugar of 1909 crop at 6¾c per lb.

F. O. B. Beauce.

125,000 lbs. Beauce Maple Sugar, 1909 crop, on a commission of one cent per lb. above the price paid the farmers.

The balance of our orders to be placed with you on commission basis provided the dealings with you are satisfactory.

Ship when you wish, provided you keep us supplied.

Accepted.

CARY MAPLE SUGAR CO.,
By. G. C. Cary.
PIERRE VIAU MAPLE CO.,
Per C. D. Cannon."

Two cars of sugar were shipped under this contract, one in the latter part of May, the other about the middle of June. While it appears that some verbal complaint was made by the defendant to an officer of the plaintiff company about the character of some of the sugar in these cars, the defendant accepted the sugar

and paid for the same.   On June 25th a third car was shipped, which, defendant refusing to receive, was placed in Sibley's warehouse in Chicago.   On July 14th three other cars were shipped, containing the balance of the amount of sugar called for by the contract.   On the same day, July 14th, defendant wrote to plaintiff as follows:

"Chicago, Illinois, July 14, 1909.
Cary Maple Sugar Co.,
   St. Johnsbury, Vermont.
Gentlemen:—

Cancel any orders or order you may have from us for maple sugar, as we have received from you on our original contract no first-class number one Beauce County maple sugar such as our contract or agreement called for.

Yours truly,
C. D. CANNON MAPLE COMPANY,
Per C. D. Cannon."

When the cars arrived in Chicago they also were rejected and sent to the Sibley warehouse.   Afterwards the plaintiff resold the four cars to other parties and brought this suit to recover for losses and damages claimed to have been sustained by it by reason of the failure of defendant to receive and pay for the last four cars under its contract agreement.

The reason adduced by the defendant for its refusal to accept these cars is that the character of the sugar in the first shipment was not according to the contract, but of an inferior kind, and therefore it had the right to cancel the contract and to refuse the balance to be shipped thereunder.   The written contract called for "Beauce Maple Sugar of 1909 crop."   This contract was the outcome of a conference between the parties, and the trial court permitted testimony as to what was said and done at the time.   The only material difference in this testimony concerns the color of the sugar, defendant's witnesses claiming that it was agreed that the sugar to be shipped should be

like a sample which was presented at the time of the conference, and which was of a light color. This was denied by the witnesses for plaintiff. The trial court found that "there was nothing said about color," and we find nothing in the circumstances surrounding the execution of the written contract to cause us to look beyond its terms to ascertain the entire agreement of the parties. It is established by the evidence that the sugar shipped was dark in color, and upon this fact is predicated the claim that the sugar was not according to contract.

It appears from the evidence that "Beauce Maple Sugar" is known in the trade as a sugar from the Beauce district in the Province of Quebec; that it is usually very dark, although it sometimes runs light from various causes; is strong in flavor, and is used for blending purposes and in the manufacture of tobacco. There is conflicting testimony as to whether the samples of sugar submitted showed it to be of fair average quality. It would serve no useful purpose to narrate the opposing statements of witnesses on this point. Several disinterested witnesses testified that the sugar was of fair average quality. From a consideration of the testimony of all the witnesses, we are led to the conclusion that not only did the defendant fail to prove that the sugar was not according to contract, but the greater weight of the evidence was the other way.

It is next contended by defendant that the contract provides that the sugar should be shipped "June 1st, 1909, or before," and that the four rejected cars were shipped after that date. An inspection of the original contract in the bill of exceptions shows that attempts were made by the parties to fix the time of shipments. Following the word "before" is the word "if." Then follow the words "provided you keep us supplied," and through these words a line is drawn,

as if to cancel them. On the line below, following the printed word "when," was written "at your option," but a line was drawn through these three written words. At the bottom of the contract these words are written plainly and are not erased: "Ship when you wish, provided you keep up supplied." It is evident that both parties intended to make some change in the time of shipments from "June 1st or before," and that the final agreement was contained in the last provision on that point appearing in the contract. That this is the proper construction is shown by the conduct of the parties. In the letter of July 14th written by defendant, the reason given for canceling the order is, "as we have received from you on our original contract no first-class number one Beauce County maple sugar such as our contract or agreement called for." Nothing is said about any failure to ship on time. The subsequent conduct of defendant with reference to the inspection of samples shows that the claim of delay in shipments was an afterthought, and cannot now be entertained by this court.

In Ohio & Mississippi Railway Co. v. McCarthy, 96 U. S. 258, 267, the court said:

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law."

And in Olcese v. Mobile Fruit & Trading Co., 112 Ill. App. 281, 286, it was said:

"They bottomed their refusal upon the fact that the prices were not wired to them before the fruit was shipped. Having taken this position they must be held to have waived all other objections. It is clear, under the authorities, that if a particular objection is taken to the performance of a contract, and the party is silent as to all others, the objections not made are

deemed to be waived. Littlejohn v. Shaw, 159 N. Y. 188.''

The contract provides that 125,000 lbs. of sugar were sold ''on a commission of one cent per pound above the price paid the farmers,'' and it is urged that the testimony of plaintiff's witnesses as to the price paid the farmers is hearsay. We do not agree with this contention. Witnesses testified as to the price paid the farmers based upon their own personal knowledge. The witness McDonald, in addition to testifying as to his own personal knowledge of what was paid the farmers, and that he himself had paid them in a good many cases, testified that ''the price is established before the church door. It is called out; everybody knows the price.'' And further, that it is a very primitive country away in the back woods of Canada, and that the price paid to the farmers is announced from the church door and travels very quickly.

In Hoxsie v. Empire Lumber Co., 41 Minn. 548, 551, the court said:

''Value in a business sense consists largely of the opinions of persons familiar with the market, and these opinions are largely made up of what is said and reported by others. Hence, if a person shows his business is such that, by commercial reports or other means of like nature, he is familiar with the current market prices of an article, he is competent to testify on the subject, although he may not have actual personal knowledge of any particular sales. Brackett v. Edgarton, 14 Minn. 134; Whart. Ev., Secs. 255, 449.''

And in Betts v. Southern California Fruit Exchange, 144 Cal. 402, it was held that:

''The testimony of the plaintiff with reference to the market price of the lemons was not incompetent merely because his knowledge was derived from the information of others. And in the absence of other evidence, was sufficient to sustain the finding of the court as to their value. The market price of an article is often shown by published statements of that fact.''

In McCrary v. C. & A. R. R. Co., 109 Mo. App. 567, it was said:

"It is a well understood general proposition that a witness should not state values, * * * but there are exceptions. Thus he may state the market value of grain or of a horse or of land. In these and like instances he is not stating a conclusion, but rather a fact. * * * Plaintiff was there and became acquainted with the market. He did not have to be present at each sale in order to know what it was. In the sense of legal evidence his knowledge was not hearsay as defendant contends. * * * The market was a matter of public notoriety."

It is further said that the trial court in allowing items of losses on resales allowed items not covered by the bill of particulars. The items in the bill of particulars aggregate $2,981.97. The trial court entered judgment against the defendant for $1,862.41, or over $1,000 less than the total of the items in the bill of particulars. Nothing appears from the record to inform this court as to what particular items the trial court allowed, and what was not allowed. Therefore we cannot say that the judgment contains any items not appearing in the bill of particulars.

Objections were made to the rulings of the trial court as to the admission of testimony, but we find no reversible error therein.

Holding the judgment to be right, it will be affirmed.

*Affirmed.*