[L. A. No. 10322. In Bank.—June 17, 1930.]

FIRST NATIONAL FINANCE CORPORATION (a Corporation), Respondent, v. FIVE–O DRILLING COMPANY (a Corporation), Appellant.

Bertin A. Weyl for Appellant.

Hyams & Himrod and Aubrey Devine for Respondent.

WASTE, C. J.—This is an action to recover upon a trade acceptance. The instrument sued on reads as follows:

"Trade Acceptance
"Long Beach Branch
"Security Trust & Savings Bank
"Long Beach, Calif.
" (Head office Los Angeles)
"32970 Long Beach, California, February 7th, 1923 Due
Apl 7th, '23.

"On April 7th, 1923, pay to order of Ourselves Twenty-five Hundred and no/100 Dollars ($2500.00).

"The obligation of the acceptor hereof arises out of the purchase of goods from the drawer. The drawee may accept this bill payable at any bank, banker or trust company in the United States which he may designate.
"To Roy Evans Drilling Company,
"Mission Theatre Bldg.,
"Long Beach, California.

"FIVE–O DRILLING COMPANY
"By G. F. KELLEY, Sec'y."

The instrument was duly accepted in writing by the drawee, Roy Evans Drilling Company, and prior to maturity was transferred by the drawer to the plaintiff for value, the indorsement reading: "Five-O Drilling Co., By G. F. Kelley, Sec'y." At maturity the instrument was dishonored by the drawee, and, after notice of dishonor had been given, this action was brought against the drawer for $2,000, the unpaid balance then due thereon. The cause was tried by the court, sitting without a jury, and judgment was entered for the plaintiff as prayed. Defendant's motion for a new trial was denied, and it has appealed.

Appellant's principal attack upon the judgment has to do with the asserted insufficiency of the evidence to support the findings upon which it is based. It is contended that Kelley, as secretary of the appellant company, was without authority to either execute or indorse the instrument in the corporate name. Kelley is asserted to have executed and negotiated the trade acceptance without the knowledge of his fellow officers and directors, and solely for the purpose of concealing prior defalcations upon his part. Much stress is placed upon the fact that no other officer of the appellant company had signed the instrument with Kelley, nor had the corporate seal been affixed thereto. ▮ It is now well

settled that the affixing of the corporate seal is not essential to the validity of a corporate transaction. (*City Street Imp. Co.* v. *Laird,* 138 Cal. 27, 31 [70 Pac. 916].) Nor do we attach any particular significance to the fact that no other officer of the appellant company joined with Kelley in the execution or indorsement of the instrument. Furthermore, appellant's contention comes with poor grace, for the facts and circumstances as developed upon the trial of the cause are such as to effectively preclude and estop it from thus attacking the validity of the instrument.

As a usual thing the secretary of a corporation is a mere ministerial officer whose authority does not extend to the transaction of the ordinary affairs of the corporation upon his independent volition and judgment. But one who is secretary may also have far more extensive functions than those ordinarily incident to his office. He may be clothed with the authority of a general manager, and his open and public exercise of the functions of such position is notice that he has such authority. (*Betts* v. *Southern Cal. etc. Exchange,* 144 Cal. 402, 407 [77 Pac. 993].) It has always been presumed that directors have knowledge of the business of a corporation which it is their duty to manage and control. And so, the existence of authority in subordinate officers may be established by proof of the course of business and by the usages and practices of the company and by the knowledge which the board has, or must be presumed to have, of the acts and doings of its subordinates in and about the affairs of the corporation. (*Mahoney Min. Co.* v. *Anglo-Cal. Bank,* 104 U. S. 192, 194, 195 [26 L. Ed. 707]; 6 Cal. Jur. 1067, sec. 441.)

Upon being called as a witness, the president of the respondent company testified that as president of said company and as a director and officer of the Charles M. Woods Company, he had had many business dealings with the appellant corporation, both prior and subsequent to the execution and negotiation of the trade acceptance here involved, and that such transactions were always handled by Kelley, acting as the representative of the appellant company. The witness testified: "I talked to Mr. G. F. Kelley, received the money from him, and did a lot of business with him, purporting to be the representative of the Five-O Drilling Company. In fact, I personally didn't know of

any other one of the men who were officers of the Five-O Drilling Company until after they owed the Woods Company a large sum of money and didn't pay it.'' He also testified that the transactions with the appellant company wherein Kelley had acted as its representative, totaled ''a good many thousand dollars.'' There is testimony to the effect that the appellant company maintained but one bank account, and that Kelley and F. N. Miller, vice-president and field superintendent, had opened it as representatives of the company, and that they were the only officers and directors of the company with whom the bank manager had any dealings in connection with said account. It is also in evidence that the certified check given by the respondent at the time it discounted the trade acceptance sued on was indorsed ''Five-O Drilling Co., By G. F. Kelley,'' and deposited in the appellant's bank account. Moreover, Miller, in response to a query from the president of the respondent company concerning the instrument in suit, stated that the appellant was ''financially embarrassed at the time; that he [Miller] hadn't had to do with the financial matters, and that [the witness] would have to take it up with Mr. Kelley.'' In addition to being the secretary of the appellant company, Kelley was also a member of its board of directors.

This evidence tends to indicate that Kelley, as secretary and director of the appellant company, was given more or less of a free rein in the conduct of its affairs, and carried on its ordinary business transactions. He was apparently clothed with many of the functions of a general manager, and his open and public exercise of these functions was a notice that he had such authority. ■ The decisions are numerous to the effect that whether a corporation is to be bound by a transaction does not depend so much upon the presence or absence of any express delegation of authority to the agent purporting to act for it, but is to be determined upon a consideration of all the circumstances connected with the transaction, including the manner in which the corporation ordinarily conducts its business. (*Betts* v. *Southern Cal. etc. Exchange, supra; Abbott* v. *'76 L. & W. Co.,* 87 Cal. 323, 328 [25 Pac. 693]; *Crowley* v. *Genesee Min. Co* 55 Cal. 273, 275, 276; 7 A. L. R. 1459.) In *Ellet* v. *Los Altos etc. Properties, Inc.,* 88 Cal. App. 740, 745 [264 Pac. 270], it is said: ''Authority of the corporation may be shown

by evidence that the person does business for the corporation and on its behalf as agent with the knowledge and acquiescence of its directors or by their direction. . . . Like individuals a corporation is responsible for the manner in which it permits its agents to hold it out to the world." Appellant appears to recognize this principle, for it states: "As appellant views the law with respect to establishing Kelley's authority in the premises, plaintiff might have established his authority by proof of an ostensible agency." In our opinion the respondent succeeded in doing this, appellant's present contention to the contrary notwithstanding. The transaction leading to the institution of this suit having been carried on by Kelley in the ordinary course of the business of the appellant, it may not now deny his authority in the premises. Under the evidence before it the trial court properly found that the instrument sued on had, in fact, been drawn by the appellant and indorsed by it to the respondent, and, so finding, the court below necessarily and impliedly found that, under the circumstances disclosed by the record, the appellant was bound by the acts of Kelley in his transaction with the respondent.

In addition to what has been said, there appears to be a second and equally sufficient reason why appellant's contention as to the invalidity of the trade acceptance does not come with good grace. The evidence shows that on February 7, 1923, Kelley drew two trade acceptances (one of them being the one here involved) in appellant's name against the Roy Evans Drilling Company, each in the sum of $2,500; that on February 16, 1923, and before the maturity of either instrument, Kelley, purporting to act for the appellant, sold and negotiated the two trade acceptances to the respondent for the sum of $4,800; that respondent thereupon delivered to Kelley, as appellant's representative, a certified check for $4,800, which check was thereafter indorsed by Kelley in the appellant's name and $4,500 of its proceeds deposited by him in appellant's bank account; and that no part or portion of the moneys so received from the respondent has been returned by the appellant, nor has any offer of return been made. The law does not permit a corporation to receive and retain the benefits of a contract or transaction and at the same time repudiate liability thereunder or attempt to escape the burdens thereof on the

ground that the contract or transaction was not authorized, or that the authority therefor was not set forth in its records. (*Pauly* v. *Pauly,* 107 Cal. 8, 18 [48 Am. St. Rep. 98, 40 Pac. 29] ; *Blood* v. *La Serena L. & W. Co.,* 134 Cal. 361, 367 [66 Pac. 317] ; *McKee* v. *Title Ins. Co.,* 159 Cal. 206, 222 [113 Pac. 140] ; 1 Parsons on Contracts, 118.) Even if it be assumed that respondent's recovery under this theory rests upon some equitable ground or an implied promise to reimburse it, rather than upon the instrument itself, still that portion of the prayer of the complaint wherein request is made ''for such other and further relief as to the court may seem proper,'' would justify the entry of judgment for the respondent.

A jury trial having been waived in this case, we deem it proper (Code Civ. Proc., sec. 956a) to make a finding, based on the evidence, in addition to those made by the trial court, which shall be to the effect that no part of the amount received by the defendant from the plaintiff by reason of the indorsement and delivery of said trade acceptance has been paid or returned to the plaintiff, but, on the contrary, the defendant has retained all the benefits accruing out of the transaction.

The principle relied on by appellant that an estoppel must be specially pleaded is without application in cases where the party in whose favor it exists is without knowledge that his claim must ultimately rest upon it. As a plaintiff is not advised of the defenses that may be pleaded, he is not required to plead an estoppel in order to overcome any affirmative matter set up in the answer or by way of defense. (*McCreery* v. *Charlton,* 185 Cal. 37, 42 [195 Pac. 670] ; *Llewellyn Iron Works* v. *Abbott Kinney Co.,* 172 Cal. 210, 213 [155 Pac. 986].)

We have examined the several rulings complained of and have found nothing that would warrant a reversal of the judgment. In view of respondent's showing upon the trial, the matters generally sought to be elicited by the questions propounded by appellant and to which objections were sustained could not have been of any particular or serious consequence in the final determination of the cause. Having permitted Kelley to hold himself out as clothed with the necessary authority to transact ordinary business deals in its behalf, and having at all times, even up to the

present, retained the benefits of his transaction with the respondent, appellant was properly denied the opportunity of attempting to show that it had been unwittingly victimized by Kelley. Under the circumstances disclosed by the record herein, this is a matter for adjustment solely between the appellant and its erring agent, and is without material bearing upon respondent's rights.

What has already been said sufficiently disposes of the contention that the court below committed error in denying appellant's motion for a nonsuit. Nor do we think the court erred in denying its request for a new trial. Such a motion is addressed to the sound discretion of the court to which the application is made, and its action thereon is conclusive and will not be disturbed in the absence of a clear and affirmative showing of a gross, manifest or unmistakable abuse of discretion. (20 Cal. Jur. 27, sec. 13.) Appellant's showing in this regard has failed to convince us that the court below erred in refusing to grant a new trial.

We therefore make the following finding, to be designated as I a: "No part of the amount of money received by the defendant from the plaintiff by reason of the endorsement and delivery of said trade acceptance has been paid or returned to the plaintiff, but, on the contrary, the defendant has retained to itself all the benefits accruing out of the transaction."

With such finding added, the judgment is affirmed.

Richards, J., Shenk, J., Preston, J., Seawell, J., and Curtis, J., concurred.