[L. A. No. 14135. In Bank.—November 1, 1933.]

EDWARD REGAN, Appellant, v. ALICE T. ALBIN et al., Respondents.

[L. A. No. 14136. In Bank.—November 1, 1933.]

GOLDEN EAGLE MILLING COMPANY (a Corporation), Appellant, v. ALICE T. ALBIN, Respondent.

Hibbard & Kleindienst for Appellant in L. A. No. 14135.

Edward Regan, *in pro. per.*, Patterson, Bailey & Montgomery, Patterson & Montgomery, William S. Scully and Frederick I. Richman for Appellant in L. A. No. 14136.

O'Melveny, Tuller & Myers, Walter K. Tuller, Kent Allen, Jackson W. Chance, William R. Law and Andrew T. Jenkins, as *Amici Curiae* on Behalf of Appellants.

Chapman & Chapman, L. M. Chapman, John S. Frazer, Smith & Breslin, J. E. Stillwell, Robert E. Austin and John N. Helmick for Respondents.

Mitchell, Silberberg & Knupp, M. B. Silberberg, Guy Knupp and James W. Mack, as *Amici Curiae* on Behalf of Respondents.

LANGDON, J.—The above-entitled actions were brought to enforce stockholders' liability for debts of a corporation, under the law existing prior to 1931. They were consolidated and tried under an agreed statement of facts.

Pasadena Milling Company, Inc., incorporated in California, had on November 30, 1925, an indebtedness of $146,241.92. On that date it secured a permit from the corporation commissioner to sell stock. The conditions of the permit were that it could (1) sell one share of common stock to each of five directors at $100 per share *for cash;* (2) sell 760 shares of common stock to Pasadena Milling Company for its assets, subject to the above-stated indebtedness; and (3) sell 500 shares of preferred and 235 shares of common stock at par, for cash, *but not until sale and receipt of the consideration for the shares to be issued under* provisions (1) and (2), *supra.* The permit also read: "This permit is issued *upon the condition* that a *true copy of said permit be exhibited and delivered* to each prospective subscriber for or purchaser of said securities before his subscription therefor shall be taken or any sale thereof made." Included in the document were figures showing the financial condition of the corporation. Upon the granting of the

permit, subscriptions were taken and stock was sold. Defendants are purchasers of said stock. Plaintiffs represent creditors of the corporation, and are seeking to hold defendants liable for its debts. The position of defendants is that their shares were never validly issued to them, and that consequently they are not stockholders and cannot be held. The trial court gave judgment in favor of defendants, and plaintiffs appealed.

Defendants attack the validity of the sales of their shares in the following particulars: First, the subscriptions were in all cases taken without exhibiting or delivering to the subscribers a copy of the permit, and in two instances, no subscription agreements were signed at all. Second, the five shares were sold to the directors, but none of them paid cash as required by the permit. An attempt is made by plaintiffs to avoid the effect of the failure to *exhibit* the permit by pointing out that the subscription agreement had printed on its reverse side a copy thereof, and on the front a reference thereto. *Gridley* v. *Tilson,* 202 Cal. 748 [262 Pac. 322], is cited, but the passing observation on the point, which was not an issue in the case, is not controlling here. Besides, the failure to sell the five directors' shares for cash has precisely the same effect as a violation of any other condition. Hence it appears from the admitted facts that all of the stock sold to defendants was issued in violation of some condition of the permit. Under these circumstances, are the defendants stockholders, or liable as such to creditors?

The rule that a security issued without a permit or in violation of the terms of a permit is *void* under former section 12 of the Corporate Securities Act, has been frequently declared, and must now be taken as well settled in this state. (See cases cited, *infra.*) In 1931, a provision making such a security *voidable* was substituted for the old section (see Ballantine, California Corporation Laws, sec. 513), but this has no application to the instant case.

There remains the question whether the defendants, though they may not be actual stockholders, are estopped to set up this fact against plaintiffs. In this connection it is urged that plaintiffs extended credit to the corporation, and that defendants received dividends and made no attempt to rescind their contracts of sale for over three years. It

may be preliminarily observed that there is no showing of inequitable conduct on the part of defendants, for it does not appear that any one of them knew of the invalidity of his shares prior to this action. Furthermore, plaintiffs make no showing of innocence, nor of reliance upon any acts or representations of defendants. In short, the record is devoid of actual proof sufficient to support a claim of estoppel. It need hardly be pointed out that mere silence or "acquiescence" by defendants in their position as stockholders is not enough to justify the application of the doctrine.

In addition to the definite lack of factual basis for this position of plaintiffs, there is the companion rule to the one first stated herein, that an estoppel cannot ordinarily be invoked to give validity to a contract which is void through violation of law. This rule has likewise been repeatedly declared, and has been applied in a number of cases in this state dealing with shares of stock void because of the absence of, or nonconformity with a permit. (See *Walker* v. *Harbor Realty etc. Corp.*, 214 Cal. 46 [3 Pac. (2d) 557]; *Pollak* v. *Staunton*, 210 Cal. 656 [293 Pac. 26]; *Reno* v. *American Ice Machine Co.*, 72 Cal. App. 409 [237 Pac. 784].) The precise question now before us has also received the attention of the appellate courts in this state. In *Herkner* v. *Rubin*, 126 Cal. App. 677 [14 Pac. (2d) 1043], shares had been issued in violation of conditions of the permit, and creditors sought to hold the defendant stockholder liable. It was held that no liability could be imposed. An application for a hearing in this court was denied. In *Honn* v. *Hamer*, 81 Cal. App. 276 [253 Pac. 336], and *Live Oak Cemetery Assn.* v. *Adamson*, 106 Cal. App. (Supp.) 783 [288 Pac. 29], the same conclusion was reached.

With the authorities in this state so uniformly contrary to the position of plaintiffs, their principal reliance is upon certain decisions of the federal courts, which, upon examination, do not conflict with the views expressed above. Typical of these is *In re American Aluminum Metal Products Co.*, 15 Fed. (2d) 234. In that case one Dempsey agreed to purchase shares in a corporation in which he subsequently became a director and officer. The permit authorized sales only for cash. He paid only partly in cash and his contract gave him an option to cancel. Subsequently he gave notice

of cancellation and returned the stock. The corporation was adjudicated a bankrupt, and he filed a claim as a general creditor to recover the money he had paid. The court disallowed the claim, pointing out that he was *in pari delicto* with the corporation, and could not share with innocent creditors. It is apparent that this situation, where an officer and director of the corporation is the purchaser, and is actually found to be *in pari delicto,* and seeks to share with innocent general creditors in the *assets* of the corporation in bankruptcy, is decidedly different from the situation presented here, in which *innocent* purchasers, asserting no claim to a share in the assets of the corporation, merely seek to avoid an unlimited proportional liability as shareholders which they did not, as a matter of law, assume. Certain general language in the American Aluminum Metal Products Co. case was limited by the later decision of the same court, *In re Builders Finance Assn.,* 26 Fed. (2d) 123, and the very recent case of *Cecil B. De Mille Productions* v. *Woolery,* 61 Fed. (2d) 45, which reviews and follows the controlling California cases holding the illegally issued stock void, and the doctrine of estoppel inapplicable, leaves no doubt as to the proper interpretation to be placed on the earlier federal decisions.

Plaintiffs have also referred us to our recent decisions in *Eberhard* v. *Pacific Southwest Loan & Mortgage Co.,* 215 Cal. 226 [9 Pac. (2d) 302], and *Braunstein* v. *Title Guarantee & Trust Co.,* 216 Cal. 780 [17 Pac. (2d) 104], and to the District Court of Appeal decision in *Kehrlein* v. *Builders Mortgage Co.,* 131 Cal. App. 714 [22 Pac. (2d) 242]. These cases are all distinguishable in that in each the party guilty of the illegal act sought to take advantage of his own wrong. Thus, in the Eberhard case, the corporation, having issued securities in violation of the law, attempted to assert their invalidity against the innocent purchaser thereof, in order to escape payment.

We conclude that defendants are not liable as stockholders for the debts of the corporation.

The judgment is affirmed.

Curtis, J., Thompson, J., Seawell, J., and Waste, C. J., concurred.

PRESTON, J., Dissenting.—I dissent.

I cannot indorse the doctrine pronounced in the foregoing opinion. I do, however, realize that to hold otherwise would require a disapproval of several cases, principally opinions of the District Court of Appeal, and also differentiation of some of the cases decided by this court.

The theory of the present holding seems to be based on the postulate that the corporation would have no standing in a suit on the stock subscription agreement nor any defense to an action for rescission of the sale of stock under such conditions; hence a creditor of the corporation would have no better standing. This conclusion, I think, is unsound and does not follow from the premises.

The liability of the stockholder to the creditor is a primary one. The creditor has not been a party to violation of any of the terms of the permit. The alleged violations of the permit offend no rule of public policy and violate no mandate of statute. The conditions imposed by the permit were such as sprang only from the exercise of a discretionary power by the commissioner who issued it. The stockholder may have condoned or even participated in the violation of the terms of the permit. Estoppel should apply because of a wait of three years by the stockholder without complaint and the receipt during all that period of dividends upon the stock. Now that insolvency has overtaken the corporation, the claimed invalidity is urged. Would such claim have been made had the corporation continued on its career of prosperity? I think the whole doctrine of this class of cases should be recast and that a proper line of distinction should be drawn between cases where estoppel does and cases where estoppel does not apply.

Rehearing denied.

Preston, J., dissented.