[Civ. No. 9228.   First Appellate District, Division Two.—February 6, 1935.]

CENTRAL CONSTRUCTION COMPANY, Respondent, v. STANSBURY CONTRACTING COMPANY et al., Appellants.

414

Miller & Ellis, W. A. Alderson, Shelton, Gray & McWilliams, A. Terkel and A. D. Moffat for Appellants.

Sterling Carr and Francis P. Walsh for Respondent.

STURTEVANT, J.—In an action to recover from defendants certain sums on their liabilities as stockholders the trial court made findings in favor of the plaintiff and from the judgment entered thereon two of the defendants have appealed.

The defendants make one point. They assert that one in whose name corporate stock certificates are issued is not liable for the debts of the issuing corporation when the stock was originally issued to the alleged stockholder in violation of the permit of the commissioner of corporations to issue stock. In that connection they set forth the following facts: Heretofore Capuchino Golf Corporation was incorporated under the laws of the state of California. It was organized with an authorized capital stock of 100,000 shares having a par value of $10 each. On May 26, 1926, the commissioner of corporations issued to the corporation a permit which, among others, contained the following provisions:

"CAPUCHINO GOLF CORPORATION
a California corporation, is hereby authorized to sell and issue 20,000 shares of its capital stock as herein below set forth:

"1st: To sell and issue to the persons named in its application, not exceeding to each, any or all of them, 10,000 shares of its capital stock, at par for cash, lawful money of the United States, or for 40% in cash, the balance to be evidenced by the promissory note or notes of subscribers payable in six equal monthly installments, without interest, for

the uses and purposes recited in its application and so as to net applicant the full amount of the selling price thereof.

"2nd: Whenever and as often as a share or shares of its capital stock are sold and issued under paragraph 1st hereof, to issue a like number of shares to Bush Finnell and H. A. Willard, not exceeding in the aggregate to either or both of them, 10,000 shares of its capital stock as partial consideration for promotion services rendered by them to applicant, subject to their right to receive additional shares, as final consideration, when and as authorized by the Commissioner of Corporations.

"(a) . . .

"(b) That, when issued, all certificates evidencing any of the shares authorized herein, in paragraph 2nd to be issued shall be forthwith deposited with a depositary, to be selected by said permit holder and approved by the Commissioner of Corporations, to be held as an escrow pending the further order of said Commissioner; that the receipt of such depositary for such certificates shall be filed with said Commissioner of Corporations; and, that the owner or persons entitled to said shares shall not sell, or offer for sale, or otherwise transfer, or agree to sell, or transfer such shares or any interest therein or right, thereto, until the written consent of said Commissioner shall have been obtained so to do, or said shares shall have been released from escrow."

On June 17, 1926, the commissioner issued to the corporation an "Amended and Supplemental Permit". It made no change in the original permit material to the issues involved in this action. On February 28, 1927, there was issued to Bush Finnell certificate No. 58 for 3,000 shares and certificate No. 59 for 5,000 shares. On March, 9, 1927, certificate No. 62 was issued to Laura Finnell and an entry in the stock book was made "Escrowed from No. 58". On March 2, 1927, certificate No. 61 was issued to Stansbury Contracting Company for 5,000 shares and an entry in the stock book was made "Escrowed from No. 59". The stock involved in this action is that represented by certificates No. 61 and No. 62. Orders, all in the same form, were made by the commissioner permitting transfers in escrow. One of those orders, dated March 2, 1927, was as follows:

"I expressly consent to the transfer of 5000 shares of the capital stock of CAPUCHINO GOLF CORPORATION to be effected in the following manner: From Bush Finnell to Stansbury Contracting Company 5000 shares upon the condition, that, when issued, the new certificates evidencing any of the shares herein authorized to be transferred shall be forthwith deposited with CROCKER FIRST FEDERAL TRUST COMPANY of San Francisco, California, to be held as an escrow in accordance with the condition of the permit issued to CAPUCHINO GOLF CORPORATION on May 26, 1926." The defendants call our attention to the foregoing facts as shown by the record and continuing they assert: "By February 28, 1927, before Certificates Nos. 58 and 59 were issued, Certificates Nos. 1 to 57, inclusive, had been issued representing in gross 12,530 shares but of these 3,535 shares were re-issues, so that the net number of shares issued as shown by the certificate book was then 8,995 shares and of these 6,875 were issued in noncompliance with the Corporation Commissioner's permits, so that before Certificate No. 58 was issued the number of shares issued in compliance with the Corporation Commissioner's permits was 2,120. . . . If appellant was not the owner of and had not subscribed for 5,701 shares of the capital stock of Golf Corporation it follows that the findings with regard to the proportion of stock owned by appellant, with regard to the proportion of the debt owing by appellant, and with regard to the amount of the debt of appellant, and with regard to the amount of the debt of appellant to respondent, are not any of them supported by the evidence." Assuming that the defendants have correctly stated the facts, their contentions must be sustained. (*Regan* v. *Albin*, 219 Cal. 357, 360 [26 Pac. (2d) 475].)

The plaintiff states that the facts are substantially as stated in the briefs of the defendants, but it contends that the orders consenting to transfers were in legal effect authorizations for the issuance of the amount of stock designated in such orders and validated the void issues. This contention finds no support when one reads and compares the permit and the orders consenting to transfers. The latter orders were carefully drawn and were limited expressly to transfers of stock that had already been issued. They did not purport to authorize original issues.

In its next reply the plaintiff asserts: "The appellant, as the registered owner of 5000 shares of Capuchino Golf Corporation as of the date of issuance of the permit consenting to the transfer, is liable for the debts of the corporation contracted subsequent to that date." This reply assumes facts contrary to the record. The order permitting a transfer from Bush Finnell to the Stansbury Contracting Company was made on March 2, 1927. There is no evidence that prior to that date the Stansbury Contracting Company was the "registered owner" of, or had any interest whatever in, the 5,000 shares mentioned in the permit. Therefore the plaintiff's point is not well founded. But under this same heading it contends that because the transfer was made to the Stansbury Contracting Company by Bush Finnell after a permit was obtained from the corporation commissioner authorizing the transfer, therefore it was a valid issue. Such contention is but another method of presenting the first contention made by the plaintiff and which we have already discussed.

The last reply made by the plaintiff is that the defendants are estopped to deny ownership of their stock. But the plaintiff did not plead nor prove any set of facts which in law would constitute an estoppel. (*Regan* v. *Albin*, 219 Cal. 357, 359 [26 Pac. (2d) 475].)

In what we have said above we have addressed ourselves principally to certificate No. 59 which was transferred to the Stansbury Contracting Company. However, certificate No. 58 which was afterwards transferred to Laura Finnell differs only in the figures used and the name of the transferee. The liability of the transferee rests on the same principles.

The judgment is reversed.

Nourse, P. J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 4, 1935.