[No. 26501. Department Two. April 13, 1937.]

OTTO HANSCH, *as Administrator, Respondent,* v. E. C. HACKETT *et al., Defendants,* COLUMBIA CLINIC, INC., *Appellant.*[1]

*William Stuart* and *Edgar P. Reid,* for appellant.

*W. H. Sibbald* and *John F. McCarthy,* for respondent.

TOLMAN, J.—Respondent, as the administrator of the estate of his deceased wife, brought this suit, setting up two causes of action. The first was for the benefit of the surviving husband and infant child, based on loss of services and companionship, and the second was for pain and suffering endured by the deceased prior to her death.

The case was tried to a jury, resulting in a verdict against the corporate defendant only on the first cause of action in the sum of $1,690 for the benefit of the surviving husband and $7,500 for the benefit of the infant

[1] Reported in 66 P. (2d) 1129.

child. There was a verdict in favor of the defendants Hackett and wife on the first cause of action and a verdict in favor of all of the defendants on the second cause of action.

From a judgment against it on the verdict, the defendant Columbia Clinic, Inc., has appealed.

The errors assigned are only that the trial court erred in denying the appellant's motion for a judgment n.o.v, and in entering judgment against it on the verdict.

A review of the matters involved in these assignments requires that certain features of the evidence be stated as carefully and as briefly as is possible, to the end that a complete understanding be had of the question involved.

The Columbia Clinic, Inc., is a corporation operating a hospital in the city of Longview, with the usual staff of physicians, nurses and attendants. The defendant Hackett was, at the times here involved, a licensed physician and surgeon, an employee of the Columbia Clinic, Inc., both as a physician and surgeon, and as its business manager. The respondent Hansch, being an employee of the Weyerhaeuser Timber Company, had what is called a "family contract" for the medical care and hospital treatment of the members of his family by the Columbia Clinic, Inc., which contract by its terms permitted him to designate the particular member of the hospital staff who should act if the services of the physician so designated were reasonably available at the particular time.

On April 21, 1934, respondent and his then living wife went to the hospital, saw Dr. Hackett, and advised him that Mrs. Hansch was pregnant and expected to be confined in about a month.

What we have so far said is practically undisputed. What we shall now say is sharply disputed upon prac-

tically every vital point. That which follows is what we find the jury might believe after considering the conflicting testimony.

At the time last mentioned, it appears that Dr. Hackett made the usual examination and inquired into the facts of the case and the family history of the expectant mother. The doctor then gave directions as to how Mrs. Hansch should conduct herself and asked her to bring in for examination, at intervals, samples of her urine. According to Dr. Hackett's testimony, the condition of Mrs. Hansch at that time was normal. Samples of urine were brought in, apparently, on two later occasions, which Dr. Hackett testified were examined, though not by him, and which indicated a normal condition.

Mrs. Hansch was taken to the hospital about five o'clock on the morning of May 28, 1934, placed in the care of the nurse then in charge, and Dr. Hackett was notified of the fact of her arrival. Dr. Hackett did not go to the hospital until 8:30 a. m. on that day and did not see the patient at that time. He did, on his arrival at the hospital, look at the hospital chart, which, he says, showed that the case was progressing with normal labor. With the knowledge he had, Dr. Hackett probably could not tell with any exactitude when delivery would take place, and his estimate that it was due in from six to eight hours, no doubt, appealed to the jury.

Dr. Hackett, having found that his services as a surgeon were required in a case involving severe injuries, then informed Dr. Clark, another member of the hospital staff who specialized in obstetrical cases, of the fact that he could not attend upon Mrs. Hansch and asked Dr. Clark to take care of her.

Dr. Clark did not see Mrs. Hansch until 11:45 a. m. of that day, and, apparently, no physician had seen her

from the time she entered the hospital at an early morning hour until Dr. Clark visited her, as just stated. Dr. Clark then made but a cursory examination, and, concluding that the patient was normal and that the case was proceeding normally, he did nothing more. At 1:40 p. m., Dr. Clark again saw the patient, made a further examination, and again concluded that everything was proceeding normally. At that time, he expected delivery within two hours.

Mrs. Hansch suffered a convulsion at about two o'clock p. m. Dr. Clark was immediately called and found her in a comatose condition. She was rushed to the delivery room, and the child was delivered within fifteen minutes by the use of forceps. Mrs. Hansch was then taken to the maternity ward and put to bed. The nurse there in charge was informed of what had taken place and told to watch the patient and to advise Dr. Clark of developments.

Dr. Clark saw the patient later in the afternoon and, as he said, "talked to her, asked her how she was, turned around and came out again."

Dr. Hackett looked in to see Mrs. Hansch in mid-afternoon, and both Dr. Hackett and Dr. Clark visited her at about six o'clock p. m. At neither time, according to their testimony, did either see anything wrong, and no treatment was ordered except that which is given in a normal case.

Mrs. Hansch again had convulsions, beginning about seven o'clock in the evening, and from that point on it seems to be conceded that she received proper treatment, notwithstanding which in a few hours she died.

It was the theory of the respondent upon the trial below that certain symptoms were present when Dr. Hackett first examined Mrs. Hansch, which indicated at that time the presence, or the prospective presence,

of eclampsia contravis, which is a disease associated with pregnancy.

There was plenty of evidence from lay witnesses to the effect that such symptoms were then present, but Dr. Hackett testified to the contrary, and the jury had a right to believe him.

It appears by medical testimony that, eclampsia contravis being present, or there being present the symptoms from which it may be expected that it will develop, there is a known treatment which should be at once applied and which, when applied, will greatly lessen the probability of a fatal ending. No such treatment was given to Mrs. Hansch until after she again had convulsions at seven o'clock, or later, in the evening after the birth of her child.

As we have seen, Dr. Hackett did not treat Mrs. Hansch after she came to the hospital, but turned her case over to Dr. Clark. There was therefore a wide open opportunity for the jury to find that Dr. Hackett was not negligent, but that (1) the nurse who received Mrs. Hansch at the hospital was negligent in not discovering the symptoms of eclampsia contravis and recording them on the hospital chart, so that Dr. Hackett, when he read the chart at 8:30 a. m., might have ordered the proper and necessary treatment. In passing, it may be said that, as described, the symptoms are such as should be observed by a nurse even though she might not have known what was indicated thereby. (2) The jury might have found that Dr. Clark was negligent in one or more of several ways: (a) By his failure to see the patient until 11:45 a. m., more than six hours after her arrival at the hospital and at least two or three hours after the case had been turned over to him by Dr. Hackett; (b) by not then (11:45 a. m.) discovering the symptoms of eclampsia contravis and ordering the proper treatment; and (c) by his failure

to discover the symptoms at the time of the delivery of the child or subsequently during the hours of the afternoon and then ordering a treatment which would probably have prevented the development of eclampsia contravis and the return of the convulsions.

There is also evidence from which the jury could have found that the nurse in the maternity ward was negligent in not keeping a closer watch over the patient during the hours following delivery, and in not observing and calling attention to the symptoms to which we have referred.

Appellant is liable, if at all, under the rule of *respondeat superior,* and that rule would apply to negligence by any one of its officers, employees, or servants.

It seems very clear from these facts that the jury could, as it did, exonerate Dr. Hackett and yet, by finding negligence on the part of some other employee of the appellant, render a verdict against the appellant.

The appellant has sought to bring this case within the rule first announced by this court in *Doremus v. Root,* 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649, which rule has been faithfully followed in a number of subsequent cases. The distinction is this: In all those cases, there was a charge of negligence against one, and only one, servant or employee, and if he were not guilty, then the master could not be held under the rule of *respondeat superior.*

Here, the charge and the proof is such as to permit the jury to find any one or more of four employees to be guilty, and a verdict in favor of the employee who was made a party is not a finding that another or other employees, not parties, were not guilty.

Since no exceptions were taken to the instructions and no error is assigned thereon, it is presumed that the jury was properly instructed as to the law; and, as

we have seen, the law, properly applied, permits the verdict.

The judgment is affirmed.

STEINERT, C. J., HOLCOMB, BEALS, and ROBINSON, JJ., concur.