[Civ. No. 5857.  Third Appellate District.—October 21, 1937.]

CHAS. A. BLISS et al., Appellants, v. CALIFORNIA CO-OPERATIVE PRODUCERS (a Corporation) et al., Defendants; WALTER W. JOHNSON et al., Respondents.

Arthur E. Miller and Charles A. Bliss for Appellants.

Charles W. White, Thos. R. White and Frederick W. Peters, Jr., for Respondents.

THOMPSON, J.—The plaintiffs brought suit upon a promissory note against the California Cooperative Producers, a defunct corporation, and upon stockholders' liability against the respondents for their proportion of that indebtedness. The trial court found that the respondents were not stockholders of the corporation at the time the indebtedness was incurred because they failed to pay for their respective shares of stock, thereby rendering the stock void and relieving the respondents from stockholders' liability under the provisions of section 12 of the California Corporate Securities Act of 1917, as it then existed. (Stats. 1917, pp. 673, 679; 2 Deering's Gen. Laws of 1931, p. 1934, Act 3814.) Section 12 was amended in 1931 by section 16 of the act referred to so as to render the security merely "voidable" for failure to comply with the Corporate Securities Act in procuring a permit for the sale or transfer thereof. Judgment was accordingly rendered to the effect that the plaintiff take nothing against the respondents by this action. From that judgment this appeal was perfected.

April 21, 1927, the respondents and two other individuals who are now dead filed articles of incorporation of the California Cooperative Producers which was organized to conduct a business of canning, packing and marketing fruit. The articles authorized the corporation to borrow money and

execute notes and securities to represent the indebtedness, and to "divide a portion of its profits among persons other than its stockholders". The sole and only stockholders of the corporation, until after the indebtedness which is involved in this action was incurred, were these respondents and their two associates. Each of them held one share of stock. They were also the directors of the corporation. Johnson was the president. White was the vice-president and Powell was the secretary during that period of time. The amount of capital stock was fixed at $15,000, which was divided into 1500 shares of the par value of $10 per share. The articles recited that "The amount of capital stock *which has been actually subscribed* is Fifty ($50.00) Dollars, and following are the names of the persons by whom same has been subscribed, to wit:

| Names. | Number of Shares. | Amount. |
|---|---|---|
| Ben S. Allen | One | $10.00 |
| Henry M. Hobson | One | $10.00 |
| Thos. R. White | One | $10.00 |
| W. W. Johnson | One | $10.00 |
| Wm. A. Powell | One | $10.00" |

The respondents testified that they did not pay for their stock.

Numerous meetings of the corporation were held at which each of the above-named stockholders and directors attended and participated. They voted to pay themselves as directors $10 each for every meeting attended. At a meeting held May 27, 1927, they voted to authorize the president and secretary to borrow $10,000. At the last-mentioned meeting by-laws were regularly adopted and signed by these five stockholders and directors. On March 26, 1928, the corporation commissioner duly authorized and granted the corporation permission "To sell and issue 5 shares of its capital stock as herein below set forth: To sell and issue to Ben S. Allen, Henry M. Hobson, Thomas E. [R.] White, W. W. Johnson and William A. Powell an aggregate of not to exceed 5 shares of its capital stock at par for cash." On the last-mentioned date these shares were actually issued and delivered to the respective owners thereof as above specified. At a meeting held April 16, 1928, the directors voted to authorize the borrowing of $50,000 at 7 per cent interest per annum, and to execute notes to. represent the indebtedness and security therefor.

The following day, April 17, 1928, the corporation borrowed from the plaintiffs the sum of $5,000, no part of which has been paid. The loan was represented by a promissory note signed by W. W. Johnson as chairman of the board of directors and R. B. Guernsey as vice-chairman. It was duly executed under the seal of the corporation and is payable in instalments upon specified dates at 7 per cent interest per annum. September 6, 1930, the corporation became bankrupt. This suit upon the promissory note was subsequently instituted. The only issue before this court is whether the respondents are relieved from stockholders' liability under the Corporate Securities Act for failure to pay for their respective shares of stock.

Section 12 of the Corporate Securities Act, as it existed at the time the indebtedness was incurred, upon which the respondents rely, read as follows:

"Every security issued by any company, without a permit of the commissioner authorizing the same then in effect, shall be void, and every security issued by any company, with the authorization of the commissioner but not conforming in its provisions to the provisions, if any, which it is required by the permit of the commissioner to contain, shall be void."

The respondents are estopped from setting up their failure to comply with the requirement to pay cash for their stock. That defense, under the circumstances of this case, would violate the provisions of section 3517 of the Civil Code. It would encourage fraud.

Section 12 was adopted for the protection of innocent purchasers of stock for a valuable consideration, and not for the benefit of the defaulting stockholders or a derelict corporation. (*Eberhard* v. *Pacific Southwest Loan & Mtg. Corp.*, 215 Cal. 226 [9 Pac. (2d) 302]; *Castle* v. *Acme Ice Cream Co.*, 101 Cal. App. 94 [281 Pac. 396].) The seller of corporation stock who is guilty of a failure to procure or carry out the provisions of a valid permit therefor is estopped from setting up as a defense to an action for damages or for rescission of the stock, his failure or dereliction in that regard. In the case last cited it is said:

"The seller of securities who is guilty of failure to procure the necessary statutory permit to sell and transfer the stock is estopped from setting up this defense to an action for rescission or for damages."

In the Eberhard case, *supra,* which was a suit on a promissory note secured by mortgage, the Supreme Court said:

''The inhibitions of the Corporate Securities Act . . . against sales of securities to the public without permits are meant to protect the public from imposition and deception—not primarily to benefit the seller. The seller and the purchaser are therefore in no sense *in pari delicto* where this provision is violated. The fact that the transaction may be void at the behest of the purchaser is not to allow a premium for real wrong done by the seller. The fundamental maxim that 'no one can take advantage of his own wrong' (sec. 3517, Civ. Code), and other kindred principles immediately recur to the mind.''

Numerous cases are cited therein in support of the preceding announced principles.

It is true that *innocent purchasers of stock* which is void for failure to comply with the Corporate Securities Act by first procuring the commissioner's authorization therefor are not estopped from setting up the invalidity of their stock as a defense to an action against them upon proportionate stockholders' liability for the indebtedness of the corporation. (*Regan* v. *Albin,* 219 Cal. 357 [26 Pac. (2d) 475].) The distinction between that case and the present one is clear. In the case last cited the purchaser of invalid stock was entirely innocent of any dereliction or wrong, and he was therefore equitably entitled to assert his lack of ownership of the stock. He was not thereby taking advantage of his own wrong. In the present case the respondents were the sole stockholders, directors and officers of the defunct corporation when they deceived the plaintiffs by their conduct and the records of the corporation into believing they were the lawful holders of one share of valid stock each in the corporation, issued in compliance with the corporation commissioner's permit which was previously procured. Their conduct in failing to pay for their stock amounted to fraud perpetrated on the plaintiffs by means of which they procured the $5,000 loan. They now seek to avoid liability therefor by testifying that they did not pay for the stock. It would be a travesty on justice and an encouragement of fraud to now permit them, under such circumstances, to escape liability by pleading their own deliberate violation of the specific provisions of the commissioner's permit to sell stock only for cash. The cases upon

which the respondents rely are all distinguishable from this case by application of facts similar to those of the Golden Eagle Milling Company case, *supra*, upon which the respondents chiefly rely. We are cited to no case in which it is held a valid creditor of a corporation is barred from recovering an indebtedness from purported stockholders which is incurred through the stockholders' fraud or dereliction.

It is true, as stated in the *Regan* v. *Albin* case, *supra*, that "an estoppel cannot *ordinarily* be invoked to give validity to a contract which is void through violation of law". There is, however, an exception to this rule, when the action is brought by a creditor against one who is himself guilty of fraud or deceit in holding himself out to be a stockholder.

In 11 Fletcher Cyclopedia of Corporations, page 365, section 5169, it is said:

"As a general rule, too, the corporation, its directors and officers *and stockholders* participating therein *are estopped to set up invalidity of the stock or certificates for noncompliance with, or violation of, the Blue Sky Laws.*"

When the certificates of stock are regularly issued pursuant to a duly authorized permit of the corporation commissioner procured by the sole stockholders and directors of the corporation, they are estopped from asserting the invalidity of the transaction on account of their mere failure to pay for the stock. In 5 Thompson on Corporations, second edition, page 35, section 5182, it is said:

"Neither can a subscriber for stock escape his responsibilities to creditors by showing that he had not paid the amount required by the charter or statute to be paid at the time of subscribing. The theory is that a stockholder cannot take advantage of his own wrong to the prejudice of others."

Under the circumstances of this case the stockholders are estopped from setting up their failure to pay for the stock.

It was not necessary for the plaintiffs to plead estoppel under the circumstances of this case. When the defense of an invalidity of the stock for failure to pay for it is raised for the first time in the answer of the defendants, it is not necessary for the plaintiffs to affirmatively plead estoppel, but they may then offer evidence at the trial to rebut the asserted invalidity of the stock. (*First National Finance Corp.* v. *Five-O Drilling Co.*, 209 Cal. 569 [289 Pac. 844]; *McCreery* v. *Charlton*, 185 Cal. 37, 42 [195 Pac.

670]; *Blood* v. *La Serena Land & Water Co.*, 113 Cal. 221 [41 Pac. 1017, 45 Pac. 252].)

The judgment is reversed, and the court is directed to render judgment against each of the respondents, Walter W. Johnson, Thos. R. White and Ben S. Allen, for his proportionate share of the debt due on the promissory note sued upon, to be determined as provided by law.

Pullen, P. J., and Plummer, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 20, 1937.