E. F. BLAISE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98294.   Promulgated November 15, 1940.

*Clark G. Clinton, Esq.,* for the petitioner.
*J. E. Marshall, Esq.,* for the respondent.

OPINION.

HILL: The question in this case is whether petitioner is entitled to deduct from gross income for the taxable year 1935 only 30 percent of the loss sustained by him upon liquidation of 50 shares of the

capital stock of H. T. Lockwood, Inc., a California corporation, as contended by respondent, or whether 80 percent of such loss is an allowable deduction under section 117 (a) of the Revenue Act of 1934,[1] as contended by petitioner.

There is no controversy as to the amount of the loss sustained by petitioner, nor that the shares of stock constituted a capital asset within the meaning of the statute. The sole issue relates to the period or length of time the stock was "held" by petitioner prior to its liquidation in 1935. If it was held by petitioner for more than 1 year but not more than 2 years, he is admittedly entitled to deduct 80 percent of his loss. If the stock was held by petitioner for more than 10 years, he is concededly entitled to deduct only 30 percent of his loss.

The word "held" as used in the statute is synonymous with "owned." In *McFeely* v. *Commissioner*, 296 U. S. 102, the Court said:

> In common understanding to hold property is to own it. In order to own or hold one must acquire. The date of acquisition, then, is that from which to compute the duration of ownership or the length of holding.

See also *Alvin Mercer Parker et al., Executors*, 35 B. T. A. 609, 613; *Arthur E. Otto*, 37 B. T. A. 479, 482; *Harvey S. Strassburger*, 37 B. T. A. 881, 889.

In order, therefore, to determine how long the stock in controversy here was *held* by petitioner prior to 1935, we must ascertain the date of acquisition, or that on which he became the legal owner and holder of the stock. Clearly this question involves a state rule of property, and by such rule, as established under the statutes and decisions of the courts of California, we are bound. *Warburton* v. *White*, 176 U. S. 484, 496; *Tyler* v. *United States*, 281 U. S. 497; *Christine Smith Kendrick et al., Executrices*, 34 B. T. A. 1040, 1044. "State law determines the ownership of property subject to its jurisdiction." *Cannon* v. *Nichols*, 80 Fed. (2d) 934, citing *Poe* v. *Seaborn*, 282 U. S. 101, and *Hoeper* v. *Tax Commission of Wisconsin*, 284 U. S. 206.

Petitioner subscribed and paid for at par 50 shares of the California corporation in 1925, shortly prior to which date the corporation had obtained a permit from the State Commissioner of Corporations authorizing it to sell 500 shares of capital stock *to its incorporators*. Petitioner was not an incorporator. Section 12 of the Corporate Securities Act of California, in effect, during the year 1925 (Deer-

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

\* \* \* \* \* \* \*

80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years;

\* \* \* \* \* \* \*

30 per centum if the capital asset has been held for more than 10 years.

ing's General Laws of California, 1923, part I, p. 1414) provided as follows:

Securities Void.—Every security issued by any company, without a permit of the commissioner, authorizing the same then in effect, shall be void, and every security issued by any company, with the authorization of the commissioner but not conforming in its provisions to the provisions, if any, which it is required by the permit of the commissioner to contain, shall be void.

The Supreme Court of California, in *Regan* v. *Albin*, 26 Pac. (2d) 475, 476, referring to the above statute, said:

The rule that a security issued without a permit or in violation of the terms of a permit, is *void* under former section 12 of the Corporate Securities Act, has been frequently declared, and must now be taken as well settled in this state. * * * In 1931 (St. 1931, p. 949) a provision making such a security *voidable* was substituted for the old section * * * but this has no application in the instant case.

The corporation involved in the present case not only was without authority under the corporation commissioner's permit to issue stock to petitioner in 1925, but the stock was issued in direct violation of the terms of the permit, and was therefore void. The fact that both the corporation and petitioner treated the stock as valid, as evidenced by the payment to petitioner of a 75 percent cash dividend in 1929, did not validate the void stock. In *Tatterson* v. *Kehrlein* (Cal.), 263 Pac. 285, it was said:

The doctrines of estoppel by contract and ratification have no application to a contract which is void because it violates an express mandate of the law or the dictates of public policy. Such a contract has no legal existence for any purpose and neither action nor inaction of a party to it can validate it and no conduct of a party to it can be invoked as an estoppel against its invalidity.

See also *Regan* v. *Albin*, *supra*, where the Supreme Court of California held that stockholders were not estopped from claiming invalidity of stock issued in violation of the terms of the permit because they received dividends.

Petitioner did not become a legal owner and holder of the stock of the corporation in 1925 because the stock issued to him in that year was void, and the corporation at all times held the money paid in therefor for the use and benefit of petitioner. *Grossman* v. *Ballman* (Cal.) 298 Pac. 829; *Regan* v. *Albin*, *supra*. In the latter case the court held that the defendants, to whom stock had been issued in violation of the terms of the permit, were not liable as stockholders for debts of the corporation. In *Cecil B. de Mille Productions, Inc.* v. *Woolery* (C. C. A., 9th Cir.), 61 Fed. (2d) 45, the court declared that an act or contract prior to 1931 violating the California Corporate Securities Act was void, not voidable, and a party not in *pari delicto*, if entitled to any relief, might have restitution only.

It is respondent's contention that the period of petitioner's holding of the stock here in controversy should be computed from the date

of issuance in 1925, and that, since petitioner had held the stock for more than ten years prior to the close of the taxable year, he is entitled to deduct only 30 percent of the stipulated loss. In support of his argument, respondent cites *Angelus Building & Investment Co.* v. *Commissioner*, 57 Fed. (2d) 130, affirming 20 B. T. A. 667; certiorari denied, 286 U. S. 562.

The cited decision, we think, does not rule the present proceeding. There, the controversy was whether or not amounts paid to the holders of "preferred" stock issued in violation of the California statute constituted interest deductible by the corporation which had illegally issued such stock without a permit. The question of legal ownership of the stock was not directly involved, and, since it appeared from the facts that payments were made by the corporation out of profits to all of the stockholders in proportion to shares, it was held, for the purposes of that case, that the amounts claimed as deductions did not constitute interest, but dividends.

What was said in the cited case must be viewed in the light of the facts under consideration. The taxpayer there could not be said to be "*a party not in pari delicto*", an essential condition to the application of the rules and doctrines hereinabove referred to. On the contrary, the Angelus Building & Investment Co., in connection with the determination of its tax liability, was seeking to benefit by its own wrongdoing. This point was stressed in the opinions of both the Board and court, the latter saying:

The government in the collection of its revenues takes no notice of any situation of accountability to a state that the taxpayer may have caused to exist through his own wrongdoing.

The principle stated is not applicable in the instant case. Petitioner was not a party in pari delicto in causing the stock to be illegally issued in 1925, and hence is not here seeking to benefit from his own wrongdoing. Petitioner was a member of the investing public for whose protection the Corporate Securities Act of California was primarily enacted.

We hold, therefore, that petitioner became the legal owner and holder of the stock here involved on September 15, 1934, and, in accordance with the provisions of section 117 (a), *supra*, is entitled to deduct from gross income for the taxable year 80 percent of the loss sustained by him.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

———

MURDOCK, dissenting: The petitioner is claiming a deduction for loss which occurred when a corporation in which he had invested was liquidated. Section 115 (c) provides that amounts distributed in

complete liquidation of a corporation shall be treated as in full payment in exchange for the stock. The Commissioner has determined that the loss was a capital loss under section 117 and limited to 30 per centum, since the asset had been held for more than ten years. A capital asset is defined as property held by the taxpayer. The petitioner made an investment of $5,000 in the corporation on or before July 20, 1925. He retained that investment until the latter part of 1935, a period of more than ten years. He received during that time a 75 percent cash dividend on the investment, which was taxable to him as a dividend. *Angelus Building & Investment Co.* v. *Commissioner*, 57 Fed. (2d) 130, affirming 20 B. T. A. 667; certiorari denied, 286 U. S. 562. Although the original certificates evidencing his investment were illegally issued, nevertheless the group of investors recognized that all were upon the same basis and permission was obtained whereby valid certificates were issued. I think it was the intent of Congress to limit the deduction under such circumstances to 30 percent of the loss. Cf. *Lyeth* v. *Hoey*, 305 U. S. 188. The view taken by the majority seems too narrow. It permits no satisfactory answer to the questions of how the dividend of $3,750 was taxable and of how the petitioner would have been taxed had he sold his investment prior to 1934.

ARUNDELL, STERNHAGEN, MELLOTT, and DISNEY agree with this dissent.